UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

Thomas Knox,

        Plaintiff,

Vs.

Massachusetts Department of Correction;
Michael Corsini, Superintendent, Mass.
Treatment Center, Bridgewater, in his
official capacities; Abbe Nelligan, Deputy
Superintendent, A.D.A. coordinator at M.T.C.
in her official capacities; Karen Dinardo,
Deputy Superintendent, MCI-Shirley, also
A.D.A. coordinator in her official capacities;
Kimberly Lyman, Director of Forensic Health
Services at M.T.C. She is responsible for inmate
treatment, in her official & individual capacity,

        Defendants.

CIVIL ACTION
No._____

---

COMPLAINT

---

I. Complaint:

    Plaintiff, Thomas Knox, pro se, for their complaint state as follows;

II.                    THE PARTIES

    1.     Plaintiff, Thomas Knox is, and was at all times mentioned herein, an adult citizen of the United States and a resident of the State of Massachusetts.

    2.     Defendant Massachusetts Department of Correction and (hereafter "DOC") is a Department of the Commonwealth of Massachusetts. Its central headquarters are located at 50 Maple Street, Suite No. 3 Milford, Ma. 01757.

3.      Defendant Michael Corsini is Superintendent of the Massachusetts Treatment Center, (hereafter "MTC") Bridgewater, Ma. is responsible for the administration of MTC. At all times relevant to this plaint, Superintendent Corsini was acting within the scope of his employment and under color of State law. He is sued in his official capacity.

4.      Defendant Abbe Nelligan is Deputy Superintendent of MTC. Defendant Nelligan is also the Americans with Disabilities Act co-ordinator for inmates at MTC, (hereafter "ADA") in particular for the decisions made there with regard to the disabled. At all times relevant to this plaint, Defendant Nelligan was acting within the scope of her employment and under color of State law. She is sued in her official capacity.

5.      Defendant Karen Dinardo is Deputy Superintendent of MCI Shirley facility (medium). Defendant Dinardo is the ADA coordinator for disabled inmates there. At all times relevant to this plaint Defendant Dinardo was acting within the scope of her employment and under color of State law. She is sued in her official capacity.

6.      Defendant Forensic Health Services Kimberly Lyman is the director of operations at MTC, (hereafter "FHS"). Defendant Lyman is responsible for particular levels of treatment to inmates in the sex offender treatment program or "SOTP". At all times relevant to this plaint, Defendant Lyman was acting within the scope of her employment and she is sued in her individual capacity.

III.                    **JURISDICTION AND VENUE**

7.      This Court has Jurisdiction over these claims pursuant to 42 U.S.C. section 1983, 28 U.S.C. §§ 1331,1332,1343. Plaintiff Knox's claims arise under Federal Law, including the American with Disabilities Act, 42 U.S.C. § 12101 et seq. and the R.A. of 1973. Venue is proper in this District under 28 U.S.C. § 1391 (b).

IV.                    **FACTUAL ALLEGATIONS**

   8.    Following an accident in 1980 in returning from Texas to attend a Military muster for the U.S.ARMY Ready-Reserve unit in Mass., of which was part of a contract of finishing the three (3) years active duty overseas and the last three (3) years Stateside at Fort Devens, Ma.

   9.    The accident left plaintiff Knox with a broken back in several places and as a result, caused paralysis from the waist down with bladder and bowel incontinence, leaving Knox without any or little control over body functions.

   10.   The recovery was painful and arduous over a years time at the Veterans Spinal Cord Hospital located at West Roxbury, Ma., that resulted in Knox being wheelchair bound for over 34 years.

   11.   Plaintiff Knox is a L/4 paraplegic inmate at the DOC treatment center and is a qualified individual with a disability as defined in the Americans with Disabilities Act (ADA) who suffers from physical impairments that substantially limit one or more Major life activities, including but not limited to walking and performing manual tasks. Knox is also a qualified individual with a disability as defined in Section 504 of the Rehabilitation Act of 1973.

   12.   Defendant DOC is a Public entity a defined under TITLE II of the ADA, 42 U.S.C. § 12132 (1)(B).

   13.   Defendants administer a program or activity that receives Federal finacial assistance.

   14.   As a State prisoner, Plaintiff Knox meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by defendants, 42 U.S.C § 12102 (2); 42 U.S.C. § 12131 (2).

COUNT ONE

V. <u>VIOLATIONS OF THE A.D.A. AND THE REHABILITATION ACT ARISING DENIED ACCESS TO PRISON FACILITIES</u>

15.    Plaintiff Knox repeats and incorporates by reference the allegations of paragraphs 1 through 14 above.

16.    On or about the 12th of August 2013, the plaintiff Knox was transferred from MCI-Shirley (medium) to MTC under an express contract, inasmuch as, plaintiff willfully agreed to go, although Knox sacrificed a good job, the chance to complete the self funded paralegal correspondence school that Knox retained a 4.0 G.P.A., and only had a few Months to Graduate and also gave up the solace of a single cell.

17.    Apropos, on 2/25/14 Knox attempted to utilize the MTC Law library[2] restroom of no avail, and also the Learning Center restroom(s) [a]re " sine qua non ", and discovered that they are both too narrow and inaccessible for wheelchairs.

18.    Plaintiff filed a Grievance on 2/26/14, (No.:71529).

Moreover, a large portion of the programs, exempli gratia; Pathways 1 through 5, Computer classes, Woodshop, Art , Educational courses, et cetera, are located upstairs.

19.    On knowledge and belief, plaintiff Knox came to the MTC for treatment, to learn about maladaptive behaviors and take advantage of programs that other non-disabled inmates enjoy. This was the contract that was breeched by defendants. These obvious barriers should have been dealt with years ago so as not to be in violation and cause an undue burden on the plaintiff's disability, or those that come after. The MTC should be in compliance with 28 C.F.R. §§ 35.151 (a)-(b)(2007)

---

[2] that part of the MTC facility was built prior to ADA's enactment of January 26,1992, however, the modification should have taken place at the same time the modular units of housing were constructed, subsequent to 1992.

20. Plaintiff Knox's disability-related issues will [n]ot [p]ermit [h]im to be locked in a public facility that is void of proper restrooms, (in case of an emergency) and virtually all other prison programs constitute exclusion from participation in or denial of the benefits of the prison's services, programs, or activities.

21. As required, per PLRA - 42 U.S.C.A. § 1997e(e)., the plaintiff had filed an Appeal to defendants on or about the 10th of March 2014, although as to date, there has been no response whatsoever. The exhaustion of Administrative remedies has been satisfied.

22. As a direct consequence to the said violations, plaintiff Knox has been injured by defendants' failure to correct the obvious barriers and improper actions, Knox is suffering, among other things, humiliation from discrimination in the inability to utilize what the non-disabled inmates enjoy daily, especially in the year 2014, well after some 22 years of a Congressional Mandate proscibing disparity among the least.

VI.                           COUNT TWO

### DEFENDANTS IMPROPERLY DEPRIVED PLAINTIFF KNOX THE EQUAL PROTECTION OF THE LAW

23. On or about the 11th of February 2014, Plaintiff Knox was ordered from south one housing unit (S-1), or "Orientation" block (downstairs) to North Two (N-2), upstairs without notice.

24. At which time Knox stated his opposition of the move to the block officer (CO), inasmuch as, the glaring difficulties that a wheelchair would encounter with the logistics of elevator usage when traveling to [a]ll destinations.

25.     As a direct result of the consequences to this improper action by defendants, plaintiff Knox instantly loses his independence, (of what little Knox retains) to move with the non-disabled inmates, Knox is late and driven out before finishing meals, or missing meals altogether, of which are critical, considering Knox does **not** receive any funds from the outside for food from the Canteen, and moreover, plaintiff Knox has lost over 35 pounds, (mostly muscle mass, not fatty tissue). This radical loss is documented by Medical.

26.     Since Knox's arrival at MTC and because the portion size of the meals are so small, the plaintiff has difficullty sleeping or focussing in class, groups, community meetings or support groups with constant hunger pangs. In addition, Knox is also always late or miss movements to the yard and to medication/supply lines with others.

27.     On the 25th of April 2014, Plaintiff Knox filed a DOC Grievance in relation to the issue mentioned above. There has not been a response to date.

28.     Upon knowledge and belief, the plaintiff must ask the C.O.'s every time to exit and move off N-2 (upstairs), of which is upwards 8 to 10 times a day, and always waiting in the cold for 15 to 20 minutes.

29.     By depriving Knox the equal treatment afforded those in the same situation, id est, those inmates with wheelchairs, walkers, canes or any other disability with equal or greater criminal history cases are in fact at N-1, downstairs at ground level. These inmates do come and go at their free will, per se. It must be stated, upon Knox's only option is to cease the program, for the simple reason of the constant harassment and stress at the elevator, and thus, loss of good time constitutes protected Liberty interest. Plaintiff Knox retains his rights under 42 U.S.C. § 1983.

30.     This retrobution [ a priori ] to Knox is derived from prior grievances, and/or Litigation in the past, and is arbitrary and capricious without fundamental fairness to the ongoing injury of the mental anguish. This obvious disparity is " significant and atypical " and is in violation of State and Federal Statutes to the handicapped.

31.     As a requirement, a DOC grievance was filed on the 21st of March 2014, followed by an Appeal on or about the 10th of April 2014.

32.     In addition, the plaintiff Knox also lauched the Grievance for Forensic Health Services (FHS) in order of further attempts to remedy the improper actions by defendants. Knox also submitted a request of " reasonable accomodations of special needs " a.k.a. the ADA form "A" on the 12th of March 2014. That was DENIED by DOC defendants.

33.     Plaintiff Knox has suffered harm from C.O.'s and defendants ongoing disparaging comments in causing them extra work or inconvenience by taking time to operate the elevator. It is an undue burden on Knox's disability.

34.     Most egregious is, being left behind during a Fire Drill evacuation of the upstairs N-2. On or about the 3rd of April 2014, the plaintiff Knox was [n]ot allowed to exit the building with the others in the Community, and only after a Major miss count in the Gym did the Block Officer remember the plaintiff was still upstairs. Only after 16 to 18 minutes past was another CO summoned to find the key for the lift. Although the plaintiff did make his way to the Gym, this unsafe and contemptuous practice is avoidable and needs to stop.

**NOTE:**     Commonwealth of massachusetts
              DOC/MTC Orientation Handbook
              FIRE SAFETY EVACUATION
              8. For your safety and the safety of others, Remember:
                 - **Do not use an elevator to evacuate a building.**

---

this also reads on the walls of the elevator itself.

35.    A Fortiori, the response on 4/07/14 from Forensic Health Services i.e., " the therapists " remarked and redirected the focus on the DOC, insofar as, keeping the Plaintiff Knox upstairs at N-2. However, this very well may be a ruse or an "ignis fatuus", and is yet to be determined upon discovery.

36.    Additionally, there is no apparent Penological interest of the DOC defendants to remain static on the issue, considering it costs nothing to be at ground level.

Therefore, the Departments " arguendo " is flawed, claiming that Knox being upstairs is quote; " Proper Treatment", (close quote). The N-1 unit (downstairs) does and will achieve the same goals as N-2.

Lastly, Plaintiff Knox did not volunteer and sign up to be abused or to be apart of some inane social experiment of sorts, nor does Knox need added stress and humiliation from guards or worse, other inmates to his plight. Plaintiff Knox was sent to Prison [a]s punishment, [n]ot [f]or punishment.

VII                    COUNT THREE

### DEFENDANTS IMPROPERLY DEPRIVED PLAINTIFF KNOX OF EQUAL PAY FOR EQUAL WORK

37.    In brief, prior to the transfer to MTC for treatment and/or programs, Knox had spent a little over 10 years at MCI-Shirley (medium) facility, located at P.O.box 1218, Shirley, Ma. 01464.

38.    Defendants improperly deprived Knox of " Equal pay for Equal work " while he was housed in F-1 block. Each block has a number of inmate workers or runners that keep general areas clean.

39.    This disparity and blatant discrimination by defendants is contrary to the " Equal Pay Act ", a Federal Law mandating that all who perform substantially the same work must be paid equally, id est; 29 U.S.C.A. § 206. Also, proscribed by State Law.

40. On information and belief, the issue is rather fundamental, inasmuch as, the whole time Knox spent at Shirley the inmates in the wheelchairs were referred to by DOC staff as the, "ADA", and the assertion is that the ADA inmates have always, and as to date, never been paid over a dollar a day, regardless of what level or senority to the position they hold. Moreover, the defendants have a policy of refusing jobs to wheelchair bound inmates generally.

41. On or about the 4th of October 2011, the Plaintiff Knox realized this contemptuous and gross imbalance by defendants and filed a DOC grievance. No.:58700, of which was DENIED. On the 8th of November 2011, an Appeal was launched, also DENIED. Additionally, to attempt a remedy, plaintiff sent a ancillary request to the Director of Administrative Resolution, again of no avail on 5/2/12.

42. The Defendants' position on the matter is that they designate the block workers or runners as in a category of "C" rate of pay. As discovery will unveil and demonstrate that this rubric is only for "Industry Workers", outside of the block areas, e.g., laundry, sewing shop, camp maintenance, etc.

43. At one point in the plaintiff's work history, Knox did receive a pay of $2.00 a day, although much later, however, that was short lived, and in 2013, Knox was payed less again. This is a failure of conditions implied in fact. As a matter of fact, Knox's two dollar position was an anomaly, only because a particular officer (CO) had seen the injustice of the situation and advocated for Knoxs' equal pay. Although the rest of the disabled inmates never received more than a dollar a day.

44.     By the defendants refusing to assign prison jobs that pay equal to wheelchair-bound inmates, defendants willfully discriminated against the plaintiff Knox and other wheelchair-bound inmates that are unlettered or simply unaware of the disparity, solely on the basis of their disabilities in violation of the ADA and the Rehabilitation Act.

45.     Plaintiff Knox has suffered harm from defendants' breech of an express contract and mala fides conduct, including the loss of potential funds that Knox is entitled to valuable consideration. This is to be determined upon discovery of finacial DOC records, if Granted.

VIII                     **COUNT FOUR**

### DEFENDANTS IMPROPERLY IMPOSE UNDUE INFLUANCE TO SIGNING OF WAIVER IN LIMITS OF COFIDENTIALITY

46.     In 2013, Plaintiff Knox was then housed at MCI-Shirley (medium) facility. At which time Knox was called to the Correctional Program Officers building to discuss the signing of a confidential waiver in order to attend the sex offender treatment program or "SOTP" at MTC, Bridgewater, Ma.

47.     During the interview, Knox presented a question as to "Why" the signing of a waiver to surrender his rights of confidentiality, and if there was an option to not signing a waiver. In so many words, the CPO stated that, without the signing of the waiver, it would <u>not</u> BE POSSIBLE TO ATTEND THE PROGRAM and that without signing it, you would be "non-compliant", and would not go, end of story. So, at which time the waiver was signed to be in compliance, and across the rubicon, reluctantly.

48.     On knowledge and belief, the day of the 12th of August 2013, the plaintiff arrived at MTC and has been conversing with other inmates that have been in treatment for several years, and the foregone conclusion is that; through the intimate conversations in Group are in fact written down and recorded or otherwise disseminated to whomever in the Commonwealth and beyond. Because of the waiver of confidentiality the faith is diminished greatly by not having a much needed trust with the therapists.

49.     The Plaintiff wholeheartedly believes that by FHS having the authority to hand over possible incriminating or personal information to anyone, e.g., the DOC and its affiliated agencies, as well as Legal personnel, et al., does seriously affect the quality, the climate and the overall long-term outcome of results for participants/patients. Frankly, in short, everyone is scared to talk in group and it really hinders proper or effective treatment, especially those that could use it. This present treatment is patently flawed and greatly loses its core focus or goals, and that should be to offer an honest approach to try and reduce the mindset of re-offending in the Community.

50.     In addition, to signing the waiver of Limits of Confidentaility is contrary to the "Psychotherapist- Patient Privilege Act. (1968)," A privilege that a person can invoke to prevent the disclosure of a confidential communication made in the course of diagnosis or the treatment of a mental disorder or emotional condition by or at the direction of a psychotherapist."

POST SCRIPTUM:

As derived from past experience and knowledge, there is a very good likelihood of DOC retaliation for bringing this cause of action, in one form or another, e.g. added shakedowns, frivolous type of tickets, etc., even though it is the plaintiff's Constitutional right to redress Government. Plaintiff Knox feels the Court should be aware.

51.     As a direct point, the plaintiff Knox invoking his Constitutional right not to sign a confidental " Limited " waiver, the defendants deem plaintiff Knox to be non-compliant, and Knox or other inmates will be transferred out to a correctional facility that is less desirable, thus, losing valuable good-time credits. This type of loss rises to a Constitutional protected interest and changes the out date of an inmates sentance.

52.     This abuse is a Machination and a blatant undue influence to improper use of power or trust in a way that deprives a person of free will. per se, and substitutes another objective.

53.     The plaintiff Knox further states that, this is glaring malum in se and is illicit quid pro quo, i.e., (a thing [good-time] credits given or received for another thing, [dissemination of inmate information]),(tortious).

54.     Therefore; as of what is just and fair, the Forensic Health Services  (FHS) waiver of Limited therapeutic confidentiality should be vitiated as of right.

## VERIFICATION

I have read the foregoing Complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I Certify under penalty of perjury that the foregoing is true and correct.

Executed at Bridgewater, Massachusetts on this date:_____

Signature: _____
          Thomas Knox, pro se

## PRAYERS FOR RELIEF

WHEREFORE; Plaintiff Knox respectfully prays that this Court:

(1)  Enter a judgment in favor of the plaintiff Knox and against Defendants in each of the Counts in this Complaint;

(2)  Issue preliminary and permanent injunctions against Defendants Ordering them to modify the MTC Law Library and Learning Center's restrooms to current State and Federal Codes;

(3)  Issue preliminary and permanent injunctions against Defendants Ordering them to stop discriminating against incoming disabled inmates by forcing them to endure the rigors of having to use the elevator for permanent residency and/or programs;

(4)  Issue preliminary and permanent injunctions against Defendants Ordering them to Award plaintiff Knox the remuneration he is entitled from the discrimination of pay grade to the disabled;

(5)  Issue preliminary and permanent injunctions against Defendants on the basis that the confidential waiver is illicit and demand to vitiate with prejudice;

(6)  Issue preliminary and permanent injunctions against Defendants Ordering them to Award Plaintiff Knox the good-time credits he would have earned but for Defendants' failure to recognize reasonable accommodations for his disability;

(7)  Award Plaintiff Knox his reasonable costs and expenses of this action;

(8)  Award Plaintiff reasonable attorney's fees;

(9)  Grant such other and further relief as this Court considers just and proper.

## JURY DEMAND

Plaintiff Knox Demands Trial by Jury on all issues Triable thereby.

DATED: 4/13 2014      Respectfully Submitted,

_Thomas Knox_
Thomas Knox
30 Administrative Rd.
Bridgewater, Ma.
02324