UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THOMAS KNOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-12457-LTS |
| | ) | |
| MASSACHUSETTS DEPARTMENT OF CORRECTION, et al., | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

February 3, 2016

SOROKIN, J.

      Plaintiff, Thomas Knox, filed an Amended Complaint on April 13, 2015, asserting nine claims, against Defendants, Massachusetts Department of Correction ("DOC"), Carol Higgins O'Brien, Steven J. O'Brien, Michael Corsini, Abbe Nelligan, Tiana Bennett, Forensic Health Services/MHM, Inc. ("FHS"), and Kimberly Julius ("Julius").[1] Doc. 53 at 1. The DOC Defendants (DOC, C. O'Brien, S. O'Brien, Corsini, Nelligan, and Bennett), and the FHS Defendants (FHS and Julius), filed separate Motions to Dismiss. Docs. 62, 63. Knox opposes each Motion to Dismiss. Docs. 72, 73. Knox has also filed a Motion for a Preliminary Injunction, Doc. 69, which the DOC and FHS both oppose, Docs. 77, 83.

---

[1] DOC is a department of the Commonwealth of Massachusetts; Carol O'Brien is the Commissioner of DOC; Steven O'Brien is the Superintendent of the Massachusetts Treatment Center ("MTC"); Corsini is a former Superintendent of MTC who left the job in June, 2014; Nelligan is Deputy Superintendent of MTC; Bennett is the Director of Treatment and Classification at MTC; FHS is a corporation that contracts with DOC to administer treatment programs for MTC residents; and, Julius is the Program Director for FHS's services at MTC. Doc. 53 ¶¶ 2-9.

According to the Amended Complaint,[2] Knox is a "wheelchair-bound paraplegic inmate" at the Massachusetts Treatment Center ("MTC").[3] Doc. 53 at 1. At MTC, FHS makes recommendations for treatment services for inmates, and these services correspond to particular housing assignments. Id. ¶ 22. DOC then acts on these recommendations. Id. Through this process, Knox was assigned to live on the second floor of the North Wing of MTC on February 11, 2014. Id. at 29. As a result of living on the second floor and being in a wheelchair, Knox had to use the elevator with the assistance of a corrections officer to get to services and programs on the first floor; due to delays in receiving assistance to use the elevator, Knox was often delayed in accessing first floor services and programs, including the Law Library, cafeteria, Learning Center, and some therapeutic programs. Id. ¶¶ 30, 32-33, 43-47. He also endured harassment by the corrections officers who helped him use the elevator. Id. at ¶ 48. Furthermore, the only means of exit from the second floor for a person in a wheelchair is the elevator, which is not in use during an emergency. Id. ¶ 41.

In the spring of 2014, Knox made multiple grievances and requests for an accommodation in the form of first-floor housing which were denied by DOC and FHS. Id. ¶¶ 54-59. In May or June of 2014, the DOC and FHS Defendants held a hearing on whether Knox's avoidance of services due to his need to use the elevator amounted to a withdrawal from the MTC program. Id. ¶ 70. Ultimately, Knox was assigned to first-floor housing soon thereafter, but he was also suspended from participation in the MTC program for 90 days. Id. ¶ 72. At the end of his suspension in September of 2014, Knox participated in therapeutic programing in the orientation group on the first floor, and at the end of his orientation program

---

[2] The Court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).
[3] Knox is a prisoner serving a criminal sentence; he is not civilly committed. Doc. 14.

on February 23, 2015, he was assigned again to a second-floor housing unit. Id. at ¶ 73-74. Knox refused to move to the second floor and, as a result, he was suspended again from the MTC program for 90 days but allowed to remain in first-floor housing. Id. at ¶ 74.

As it stands now, the parties have made some progress toward resolution of the issues. Doc. 99 (Status Report).

1. According to the parties' joint status report (Doc. 99), the Defendants have agreed to house Knox on the first floor and have agreed on a procedure in the event that the Defendants seek to move him to another floor. Specifically, the Defendants will, (1) barring exigent circumstances or legitimate penological concerns; and (2) as long as Mr. Knox continues his participation in the FHS Treatment Program, allow Knox to remain in a ground-floor housing unit for the pendency of this litigation. The DOC Defendants will, barring immediate safety or security issues, notify Knox's counsel as soon as practicable and in no event less than ten (10) days prior to moving Mr. Knox. During the pendency of this matter, FHS shall continue to allow Knox to remain in the Treatment Program, provided he continues to meet the eligibility requirements of the program, remains compliant with the program, and resides at MTC. If Knox is referred to a treatment group on the second floor, FHS shall allow Knox to remain in the treatment program while residing on the ground floor provided that the DOC delivers Knox when necessary to his treatment group to participate in the program.

2. In reliance on, and because of the parties' agreement in principle reiterated by Defendants' statement of the agreement in principle in filed pleadings, the Court finds that the Motion for a Preliminary Injunction is MOOT, and thus DENIED WITHOUT PREJUDICE. Further, although not specifically covered by the parties' agreement as reported to the Court, in the event one or more Defendants, without the 10 day advance notice, for example due to an

emergent security need, moves the Plaintiff, the Defendants shall provide notice of such a move as soon as reasonably practicable, and in any event within three (3) business days.

3. The Motions to Dismiss, (Docs. 62 and 63), are ALLOWED: (1) insofar as the Complaint seeks monetary damages against the DOC Defendants in their official capacities, O'Neil v. Baker, 210 F.3d 41, 47 (1st Cir. 2000) (monetary damages against individual defendants in official capacity barred); and (2) insofar as DOC is named as a Defendant as DOC is not a person amenable to suit under 42 U.S.C. § 1983. Wang v. New Hampshire Bd. of Registration in Medicine, 55 F.3d 698, 700 (1st Cir. 1995) (well-settled that neither a state agency nor a state official acting in his official capacity can be sued for money damages under §1983).

4. The Motions to Dismiss, (Docs. 62 and 63), Count 5 are ALLOWED, but only insofar as the Amended Complaint alleges interference with a rehabilitative need. See Fiallo v. De Batista, 666 F.2d 729, 730 (1st Cir. 1981) ("We are unaware of any authority for the proposition that a prison inmate has a federal constitutional right to rehabilitation. Indeed all the indications appear to be to the contrary."). To the extent Count 5 alleges that the Defendants have conditioned medically necessary treatment on Knox's waiver of his confidentiality rights, the Motions to Dismiss are DENIED WITHOUT PREJUDICE to renewal on summary judgment

5. In all other respects the Motions to Dismiss are DENIED WITHOUT PREJUDICE to renewal on summary judgment.[4]

6. In light of the foregoing, the parties' shall file within 10 days a joint status report: (1) identifying the claims, if any, Knox intends to press; and (2) including a proposed focused and prompt discovery schedule, including summary judgment deadlines.

---

[4] To the extent the DOC Defendants seek summary judgment, as an alternative to the motion to dismiss, as Doc.62 is styled, it is DENIED WITHOUT PREJUDICE as premature.

7.     This case is referred to Magistrate Judge Boal for all purposes including both dispositive and non-dispositive motions.

                                  SO ORDERED.

                                   /s/ Leo T. Sorokin
                                  Leo T. Sorokin
                                  United States District Judge